UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL MORAS, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ALBERTSON'S LLC and ABS ID-O LLC,<br><br>　　　　Defendant. | Case No. 1:15-cv-00093-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it defendant Albertsons, LLC's and ABS ID-O, LLC Motion for Summary Judgment (Dkt 26), and Plaintiff Moras's Motion to Certify Class (Dkt 29). The Court heard oral argument on September 1, 2016 and now issues its decision. The Court will address each motion below.

## FACTS

Plaintiff Moras has a mobility disability and is limited in the major life activity of walking and relies on a wheelchair, and is therefore part of a protected class under the Americans with Disabilities Act of 1992. Defendant Albertsons, LLC is a grocery chain which owns and operates retail grocery stores in a number of states, including Idaho. Moras's Complaint alleges that Albertsons has failed to maintain its premises in

compliance with the Americans with Disabilities Act of 1992, 42 U.S.C. § 12101, et seq. Specifically, Moras alleges that non-compliance was observed at seven Albertsons stores in claimed violation of Title III of the ADA, located at: 4700 North Eagle Road, Boise, Idaho; 10700 West Ustick Road, Boise, Idaho; 909 East Parkcenter Boulevard, Boise, Idaho; 2715 West Overland Road, Boise, Idaho; 3614 West State Street, Boise, Idaho; 5100 West Overland Road, Boise, Idaho; 1520 North Cole Road, Boise, Idaho.

At these locations, Moras hired investigators to examine the locations, and observed that the parking lots were in violation of the ADA based on the lack of van accessible parking spaces, excessive slopes in purportedly accessible parking spaces and accessible aisles, and improperly mounted handicapped signs.

Albertsons maintains that each Albertsons store is purportedly built in compliance with the ADA, and is remodeled every eight to ten-years. Briggs p. 16 ll. 11-15[1].  These remodels include a general architectural review of the store in order to identify issues that need to be addressed, and all defects in ADA compliance, if any, are repaired and brought into compliance. *Id.*  Between the initial construction and the remodel cycle of each store, Albertsons ADA compliance policy consists of reliance on customer complaints to identify maintenance issues at their facilities. Briggs p. 16 ll. 1-7. Albertsons' director of project development explained, "Generally, I think it's – you find issues and you fix them. If a customer makes a – you know, lodges a complaint that they have an issue, you know, you identify the issue and you fix it. So we don't go looking for issues; but as they

---

[1] Briggs Deposition Transcript (Docket No. 29-3) ("Briggs").

**MEMORANDUM DECISION AND ORDER - 2**

arise, we have a maintenance group and we fix those issues." *Id*. Alternatively, store managers and employees may observe and internally report obvious ADA violations. Briggs p. 17 ll. 4-8. For instance, Mr. Briggs stated, "We may not get a complaint on an issue that we fix ourselves. If you have a pavement crack or something that clearly is an issue, we may fix it. It doesn't necessarily have to be brought up by a customer. It could be internally identified and fixed." Briggs p. 99 ll. 6-10.

Following the filing of this lawsuit, Albertsons engaged certain third parties, including a licensed architect, with a goal of remediating any issues of compliance with the ADA in the seven parking lots. SOF ¶ 4[2]. The work which was completed at these sites included:

- Relocating existing (and sometimes adding) accessible parking spaces, parking access aisles and accessible paths of travel to an area where the cross-slope and/or direction of travel slopes could more easily be achieved within accepted tolerances. SOF ¶ 10.
- Removing the striping and pavement markings for existing parking spaces that presented compliance issues and designating other existing parking as the new accessible parking places with striping and required pavement markings. *Id.*
- Performing repair, replacement or modification to the existing surfaces, or to other accessibility components (specifically signage mounting heights, and grinding or smoothing surfaces where signage components were removed) to comply with

---

[2] Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment (Docket No. 26-2) ("SOF").

ADA regulations and applicable code requirements. *Id.* This work generally involved paving, pavement painting and marking, adjusting the height of existing accessible signage, or removing existing potentially non-compliant signage components. *Id.*

As a result, Defendant maintains that all seven parking lots subject to this detailed analysis were brought into full compliance with the provisions of Title III of the ADA and its implementing regulations after Plaintiff's Complaint was filed and prior to Defendant's motion for summary judgment. SOF ¶¶ 11-12.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed.R.Civ.P. 56(e). Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

# ANALYSIS

Moras's Complaint has essentially two bifurcated claims against Albertsons: 1) Seven Albertsons stores located in Boise, ID are not compliant with Title III of the ADA and must be remediated; and 2) The policies and procedures that Albertsons has implemented throughout its stores nationwide are deficient in maintaining ADA compliance. For the reasons more fully stated below, Albertsons's Motion for Summary Judgment on both claims will be granted.

1. **Defendants' motion for summary judgment regarding the claims of accessibility of the seven Albertsons locations listed in the complaint is granted.**

Moras's complaint listed seven Albertsons locations that were not in compliance with ADA accessibility requirements. In general, a facility is "readily accessible to and usable by individuals with disabilities" if it meets the requirements promulgated by the Attorney General in the "ADA Accessibility Guidelines" or the "ADAAG." *See* 28 C.F.R. § 36.406. Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, *see id.,* a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011); *See also Hubbard v. 7–Eleven, Inc.,* 433 F.Supp.2d 1134, 1145 (S.D. Cal. 2006); *cf. Am. Cargo Transp., Inc. v. United States,* 625 F.3d 1176, 1179–80 (9th Cir. 2010).

The mootness doctrine is particularly applicable to "structural modifications, which are unlikely to be altered in the future." *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997), supplemented by 1 F. Supp. 2d 1159 (D. Or. 1998). In

such cases, after expending significant sums to achieve compliance, "the suggestion that Defendant might revert to non-compliance is 'illogical,' however, because 'doing so would actually cost Defendant more than maintaining compliance.'" *Kohler v. In-N-Out Burgers*, No. CV 12-5054-GHK JEMX, 2013 WL 5315443, at *7 (C.D. Cal. Sept. 12, 2013), quoting *Kohler v. Bed Bath & Beyond of Cal.*, 2012 WL 3018320, at *4 (C.D. Cal. June 27, 2012).

As stated above, Albertsons claims that it has fully remediated any and all ADA deficiencies stated in Plaintiff's complaint regarding the seven named locations. Albertsons remediation efforts were permanent structural improvements, which make reversion to non-compliance impractical. Moras has not offered any evidence that Albertsons' efforts are insufficient to bring these locations into ADA compliance. Thus, these actions taken by Albertsons render this claim moot by reason of voluntary remediation. Accordingly, summary judgment on this part of the complaint will be granted in favor of Albertsons.

  2. **Defendant's motion for summary judgment regarding the claims against Albertsons' ADA compliance policies and procedures is granted.**

Moras seeks "[a] permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) [] which directs Defendants to take all steps necessary to remove the architectural barriers described [in the Complaint] and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that their facilities are fully accessible to, and independently useable by, individuals who use wheelchairs, and which further directs that the Court shall retain jurisdiction for a period

**MEMORANDUM DECISION AND ORDER - 7**

to be determined after Defendants' facilities come into compliance with the relevant requirements of the ADA *to ensure that Defendants have adopted and are following an institutional policy that will in fact cause Defendants to remain fully in compliance with the law*[.]" *See* Complaint, Dkt. No. 1, at Prayer for Relief, part b (emphasis added).

Section 12188(a)(2) of the ADA expressly provides for injunctive relief "requiring . . . modification of a policy." 42 U.S.C. § 12188(a)(2). Section 36.211 of the ADA's implementing regulations, entitled "Maintenance of accessible features," requires a place of public accommodation to **maintain** their accessible features. 28 C.F.R. § 36.211.

Moras maintains that Defendants' policies and practices are demonstrably deficient at maintaining accessibility. Additionally, he states that the violations of the seven named stores are illustrative of the fact that Defendants' uniform maintenance policies and practices are inadequate and permitted those stores to ultimately fall out of ADA compliance. Complaint ¶¶ 19(a)-(g)[3]. However, while the ADA does require that public facilities – like the Albertsons locations at issue here – maintain compliance through its policies and procedures, Moras has failed to show *how* or *why* Defendants' policies and procedures are deficient. Albertsons's policy relies on customer complaints, employee review, and store remodel every eight to ten years. Moras has failed to provide any evidence that Albertsons has failed to adhere to this policy, or what a competent and satisfactory ADA policy would include.

---

[3] Complaint (Docket No. 1).

**MEMORANDUM DECISION AND ORDER - 8**

Notably, the parties stipulated to a scheduling order, setting the deadline for expert witness disclosures and a discovery cutoff date of March 9, 2016. This deadline has passed and Moras has not disclosed any expert witnesses who could testify or aid the Court in determining what a valid ADA policy for Albertsons would look like. Obviously, Moras is now precluded from offering such testimony. In the absence of such evidence, Moras is unable to establish that a genuine issue of material fact exists regarding Albertsons' alleged ADA policy deficiency. *Deveraux*, 263 F.3d at 1076. There is simply no evidence in the record that Albertsons's policy is deficient. Accordingly, the Court will grant summary judgment in favor of Albertsons on this claim as well.

## ORDER

IT IS HEREBY ORDERED:

1. Defendants' Motion for Summary Judgment (Dkt. 26) is **GRANTED**.

2. Plaintiff's Motion for Class Certification (Dkt. 29) is **DEEMED** MOOT.

3. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: September 29, 2016

B. Lynn Winmill
Chief Judge
United States District Court